CASE NO. 23-13274

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

DONALD DIXON, individually and as Assignee of Girls Galore, Inc.
d/b/a Allure Gentlemen's Club,
*Plaintiff-Appellant*,

v.

UNITED SPECIALTY INSURANCE COMPANY,
*Defendant-Appellee*,

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Case No. 1:23-cv-00570-JPB

## APPELLANT'S OPENING BRIEF

Respectfully submitted by:
Richard E. Dolder, Jr.
Georgia Bar No. 220237
James (Jay) Sadd, Esq.
Georgia Bar No. 622010
**SLAPPEY & SADD, LLC**
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677
*Attorneys for Plaintiff-Appellant*

Case No.23-13274, *Dixon v. United Specialty Ins. Co.*

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u>
## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, counsel for Plaintiff/Appellant Donald Dixon hereby certifies that, to the best of counsels' knowledge, the following individuals, firms, governmental entities, and corporations have an interest in the above captioned appeal:

Boulee, J.P.

Cruser, J. Robb

Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP

Dixon, Donald

Dolder, Richard E., Jr.

Huggins, Ted. S.

Manley Shipley, LLP

Manley, John B.

Markel Group, Inc. (MKL)

Sadd, James ("Jay")

Shipley, James E., Jr.

Slappey & Sadd, LLC

Case No.23-13274, *Dixon v. United Specialty Ins. Co.*

SNC Financial GP, LLC

SNC Financial LP, LLC

State National Companies, Inc. (SNC)

State National Insurance Company, Inc.

State National Intermediate Holdings, Inc.

T.B.A. Insurance Group, Ltd.

United Specialty Insurance Company

Wyrick, Jason G.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully believes no oral argument is necessary.

## **TABLE OF CONTENTS**

TABLE OF CITATIONS ...........................................................................iv

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUES...............................................................1

I.     STATEMENT OF THE CASE ...........................................................2

     A.   Course of Proceedings and Disposition Below ........................2

     B.   Statement of Facts................................................................2

     C.   Standard of Review..............................................................4

II.    SUMMARY OF THE ARGUMENT ..................................................5

III.   ARGUMENT AND CITATIONS OF AUTHORITY ...........................6

     A. The Endorsements' Plain Language Covers "Any" Assault
        or Battery, Including Assaults and Batteries with Weapons .................6

          1.   The Underlying Lawsuit alleged an assault and battery
              for which coverage was excluded and then restored ...................8

          2.   The Endorsement restores coverage for "any" assault
              and battery, including those involving weapons...........................9

     B.   The Endorsement Restoring Coverage Must be Read
        Broadly and the Weapons Exclusion Narrowly.....................................11

          1.   Insurance policies are broadly construed in favor of
              coverage, even when there is no ambiguity .................................11

          2.   Exclusions and limitations are strictly construed so as
              to avoid forfeiture, even if there is no ambiguity.........................12

ii

      3.   Reasonable expectations doctrine ...............................................14

      4.   Applying these rules, coverage is readily apparent ....................14

  C.   In the Alternative, the Endorsement and Weapons Exclusion Conflict, Creating an Ambiguity ...........................................................15

  D. At the Very Least, there Was a Duty to Defend.......................................18

IV.    CONCLUSION..................................................................................................19

CERTIFICATE OF COMPLIANCE.......................................................................20

CERTIFICATE OF SERVICE ...............................................................................21

## **TABLE OF CITATIONS**

**Page #**

**Cases**

*Alea London Ltd. v. Lee*,
   286 Ga. App. 390 (2007)................................................................. 9

*Auto-Owners Ins. Co. v. Neisler*,
   334 Ga. App. 284 (2015)........................................................... 15, 16

*Barrett v. Nat'l Union*,
   304 Ga. App. 314 (2010)............................................................... 12

*Barrs v. Auto-Owners Ins. Co.*,
   564 F. Supp. 3d 1362 (M.D. Ga. 2021)........................................ 13

*Cherokee Credit Life Ins. Co. v. Baker*,
   119 Ga. App. 579 (1969)...............................................................11

*Clark v. United Ins. Co. of Am.*,
   199 Ga. App. 1 (1991)................................................................... 12

*Davis v. United Am. Life Ins. Co.*,
   215 Ga. 521 (1959) ....................................................................... 16

*De Lamar v. Fid. Loan & Inv. Co.*,
   158 Ga. 361 (1924) ....................................................................... 13

*Fid. Nat. Title Ins. Co. v. Matrix*,
   255 Ga. App. 874 (2002)............................................................... 13

*Georgia Farm Bureau v. Smith*,
   298 Ga. 716 (2016) ......................................................................... 6

*Hartford Cas. Ins. Co. v. Smith*,
   268 Ga. App. 224 (2004)............................................................... 12

*Hoover v. Maxum Indem. Co.,*
　291 Ga. 402 (2012) ..................................................................... 18

*Houston Specialty Ins. Co. v. Five Paces Inn Co.,*
　823 F. App'x 897 (11th Cir. 2020) ............................................. 12

*Ins. Co. of Penn. v. APAC-Se., Inc.,*
　297 Ga. App. 553 (2009) ............................................................ 6

*Lambert v. New England Fire Ins. Co.,*
　90 A.2d 451 (Maine, 1952) ........................................................ 10

*Lee v. Universal Underwriters Ins. Co.,*
　642 F. App'x 969 (11th Cir. 2016) ............................................. 16

*Livingston v. Trustgard Ins.,*
　988 F. Supp. 2d 873 (N.D. Ill. 2013) ......................................... 10

*Mikko v. City of Atlanta, Georgia,*
　857 F.3d 1136 (11th Cir. 2017) ................................................. 4

*Nationwide v. Somers,*
　264 Ga. App. 421 (2003) ............................................................ 18

*Nationwide v. Kim,*
　294 Ga. App. 548 (2008) ............................................................ 13

\* *Penn-Am. Ins. Co. v. VE Shadowood, LP,*
　2022 WL 6791444 (M.D. Ga.) ............................................. 16, 17

\* *Penn–America Ins. Co. v. Disabled American Veterans,*
　268 Ga. 564 (1997) ..................................................................... 18

*Perez v. Wells Fargo N.A.,*
　774 F.3d 1329 (11th Cir. 2014) ................................................. 4

v

*Rentrite, Inc. v. Sentry Select Ins. Co.*,
　293 Ga. App. 643 (2008)........................................................ 12

*Richards v. Hanover*,
　250 Ga. 613 (1983) ............................................................... 14

*Roland v. Georgia Farm Bureau*,
　265 Ga. 776 (1995) ...............................................................11

*S.G.I.C. v. Dowse*,
　278 Ga. 674 (2004) ................................................................ 3

*Scottsdale Ins. Co. v. McGrath*,
　506 F. Supp. 3d 216 (S.D.N.Y. 2020) .................................. 10

*Sovereign Camp v. Heflin*,
　188 Ga. 234 (1939) ...............................................................11

\* *St. Paul Mercury Ins. Co. v. F.D.I.C.*,
　774 F.3d 702 (11th Cir. 2014) ..................................... 15, 17

*State Farm v. Goodman*,
　259 Ga. App. 62 (2002)......................................................... 13

*Wilkinson v. Georgia Farm Bureau*,
　351 Ga. App. 891 (2019)........................................................ 14

## Statutes

28 U.S.C. § 1291 ....................................................................... 1

28 U.S.C. § 1332 ....................................................................... 1

O.C.G.A. § 13–2–2(5).............................................................. 16

## Rules

FRAP 4(a)(1)(A) ......................................................................... 1

## STATEMENT OF JURISDICTION

Appellant and Plaintiff below, Donald Dixon, is domiciled in Georgia.  (Doc 1-1, p.3, ¶1)   Appellee and Defendant below, United Specialty Insurance Company, is incorporated in Delaware and has its principal place of business in Texas.  (Doc 1, p.3, ¶4)   The amount in controversy is at least $1,150,264.  (Doc 1-1, p.94)  There is diversity jurisdiction.  28 U.S.C. § 1332.

The order and judgment on appeal are final and disposed of all claims.  (Doc 17 and 18)  This Court has appellate jurisdiction.  28 U.S.C. § 1291.

The order and judgment on appeal were entered September 8, 2023, and September 11, 2023, respectively.  (Doc 17 and 18)  Appellant filed a Notice of Appeal October 4, 2023.  (Doc 19)  This appeal is timely.  FRAP 4(a)(1)(A).

## STATEMENT OF THE ISSUES

This appeal involves interpretation of a liability insurance contract providing a duty to defend "bodily injury" claims alleged against an insured.  It arises in a factual context in which an innocent man sustained bodily injury when he was hit by a stray bullet while two other people were engaged in a fight.  The man brought an "Underlying Lawsuit" against the insured.  The insurer denied coverage and refused to defend its insured in the Underlying Lawsuit.

The insurance contract includes three provisions:  The first excludes coverage for assault and battery.  The second excludes coverage for claims

1

involving weapons.  The third restores coverage for "any" assault or battery.

Everyone agrees, including the district court, that the first two provisions take

away coverage for claims alleged in the Underlying Lawsuit.  Everyone further

agrees the third provision restores some coverage.  The issue on appeal is the scope

of the coverage restored.  More pointedly, the issue is choosing among two

competing interpretations of the insurance contract:  (1) Whether an endorsement

restoring coverage for "any" assault or battery restores coverage for an assault or

battery involving a weapon; or (2) whether an endorsement restoring coverage for

"any" assault or battery restores coverage for only "some" assaults or batteries.

## I.     STATEMENT OF THE CASE

### A.     Course of Proceedings and Disposition Below

Donald Dixon filed suit against United Specialty Insurance Company

("USIC") in DeKalb State Court on January 11, 2023.  (Doc 1-1, p.1)  USIC timely

removed to the Northern District of Georgia.  (Doc 1)  USIC filed a motion for

Judgment on the Pleadings.  (Doc 3)  Mr. Dixon filed a Motion for Partial

Judgment on the Pleadings.  (Docs 7 and 8)  The district court granted USIC's

motion, denied Mr. Dixon's motion, and dismissed the case.  (Doc 17 and 18)

### B.     Statement of Facts

On September 19, 2020, Mr. Dixon was a business invitee at an

establishment owned and operated by Girls Galore, Inc., d/b/a Allure Gentlemen's

Club ("GGI").  (Doc 1-1, ¶6)  GGI negligently allowed Mr. Dixon to be the victim of an assault and battery with a firearm on its premises.  (Doc 1-1, ¶7)  There is no evidence Mr. Dixon was involved in the fight or bore any fault for his injuries.  Mr. Dixon underwent surgery and experienced pain and suffering because of the assault and battery.  Following surgery, Mr. Dixon was not able to work or perform normal hygiene functions or daily chores around his home.  (Doc 1-1, ¶8)

GGI was insured by USIC.  (Doc 1-1, p. 15 of 115)  Counsel for Mr. Dixon attempted to settle prior to filing a lawsuit, but USIC refused to engage in negotiations.  (Doc 1-1, ¶10)  His attempts to negotiate with USIC having failed, Mr. Dixon filed *Donald Dixon v. Girls Galore, Inc. d/b/a Allure Gentlemen's Club* ("Underlying Lawsuit").  (Doc 1-1, ¶11 and Doc 1-1, p. 86 of 115)

GGI tendered the defense of the Underlying Lawsuit to USIC, giving USIC timely notice.  (Doc 1-1, ¶¶12-13)  The Underlying Lawsuit's allegations, Mr. Dixon contends, trigger the duty to defend.  USIC nonetheless took the risky approach of denying coverage and refusing to defend the Underlying Lawsuit.[1] (Doc 1-1, ¶¶14-15)  USIC's decision to not defend caused a default judgment to be entered against GGI for $1,150,264.  (Doc 1-1, ¶¶17-18)

---

[1] "An insurer that refuses to indemnify or defend based upon a belief that a claim against its insured is excluded from a policy's scope of coverage does so at its peril, and if the insurer guesses wrong, it must bear the consequences, legal or otherwise, of its breach of contract."  *S.G.I.C. v. Dowse*, 278 Ga. 674, 676 (2004).

After the judgment, Mr. Dixon again tried to settle all claims against GGI within policy limits, but USIC rejected the offer.  (Doc 1-1, ¶¶20-23)  GGI assigned to Mr. Dixon its claims against USIC.  (Doc 1-1, p.96)

### C.    Standard of Review

Mr. Dixon appeals both the grant of USIC's Motion for Judgment on the Pleadings and the denial of his own Motion for Partial Judgment on the Pleadings. Both are reviewed *de novo*.  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) ("We review *de novo* an order granting judgment on the pleadings.") and *Mikko v. City of Atlanta, Georgia*, 857 F.3d 1136, 1141 (11th Cir. 2017) ("We review *de novo* a district court's denial of a judgment on the pleadings.").

## II.    SUMMARY OF THE ARGUMENT

It is difficult to see how anyone could conclude that an Endorsement providing coverage for "any" assault or battery "of whatever kind" does not provide coverage for an assault or battery involving a weapon.  Yet, that is exactly what the district court erred in concluding.

Mr. Dixon filed an Underlying Lawsuit against USIC's insured alleging bodily injury caused by a stray bullet while two other people were fighting on the insured's premises.  USIC denied coverage and did not defend its insured, relying on two exclusions:  An "Assault or Battery Exclusion" and an "Absolute Weapons Exclusion."  Both exclusions bar coverage for some of Mr. Dixon's claims.

USIC's policy also includes, however, an endorsement for "Limited Coverage Assault or Battery Related Claims" (referred to as the "Endorsement"). The plain language of the Endorsement restores coverage for "any" assault or battery "of whatever kind" and "without restriction."  That language describes a large universe of assaults or batteries, including assaults and batteries with a weapon.  The district court erred in ruling that an assault or battery with a weapon is not included in the universe of assaults or batteries for which coverage is restored by the Endorsement.  Because there is at least "potential" or "arguable" coverage, the district court further erred in ruling that USIC had no duty to defend the Underlying Lawsuit.  This Court should reverse the district court.

### III.    ARGUMENT AND CITATIONS OF AUTHORITY

### A.    The Endorsement's Plain Language Covers "Any" Assault or Battery, Including Assaults and Batteries with Weapons.

"Construction of an insurance policy is governed by the ordinary rules of contract construction." *Ins. Co. of Penn. v. APAC-Se., Inc.*, 297 Ga. App. 553, 557 (2009). "Words used in the policy are given their usual and common meaning … and the policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." *Georgia Farm Bureau v. Smith*, 298 Ga. 716, 719 (2016). In this case, the district court violated these rules by ruling that "any" means only "some."

Three provisions are at issue in this case:

1.    An "Assault or Battery Exclusion" (doc 1-1, p. 26 of 115);

2.    An "Absolute Weapons Exclusion" (doc 1-1, p. 42 of 115); and

3.    An endorsement for "Limited Coverage Assault or Battery Related Claims" (doc 1-1, p. 74 of 115) (Referred to as the "Endorsement").

Everyone agrees, including the district court, that the first two provisions take away coverage and that the Endorsement restores some coverage. The disagreement is on the scope of coverage restored.

The first provision, regarding assault and battery, reads in part as follows:

This insurance does not apply to, and we have no duty to defend or indemnify any insured or any other person against, any loss claim or suit for bodily injury, property damage, injury or personal and

6

advertising injury, including claims or suits for negligence, directly or indirectly, actually or allegedly, arising out of or related to any: assault, battery …

(Doc 1-1, p. 26 of 115, internal quotation marks removed)

The second provision, regarding weapons, reads in part as follows:

This insurance does not apply to any claim, loss, suit, bodily injury, property damage, injury or personal advertising injury actually or allegedly arising directly or indirectly from, or resulting in whole or in part out of, or resulting in whole or in part out of the use of, failure to use, or based upon or attributable to weapons.[2]

(Doc 1-1, p. 42 of 115, internal quotation marks removed)

The parties agree that the above-quoted provisions *both* exclude coverage

for claims Mr. Dixon asserted in the Underlying Lawsuit.  The Endorsement,

however, restores some of that coverage as follows:

In consideration of premiums paid, it is agreed that the specific coverage excluded by [the] Assault or Battery Exclusion is reinstated on a limited basis in accordance with the following additional terms and conditions.

Subject to the limits sent forth below this insurance applies to **any loss, claim, suit** or expense for bodily injury, property damage, or personal and advertising injury including claims or suits for negligence, directly or indirectly arising out of or actually or allegedly **arising out of, or related to any: assault, battery** ….

(Doc 1-1, p. 74 of 115, internal quotation marks removed, emphasis added)

---

[2] The policy defines weapons as "instruments of an offensive or defensive nature."

The district court erred in ruling the Endorsement did not restore coverage for claims Mr. Dixon asserted in the Underlying Lawsuit.  The district court erred by construing the first paragraph quoted above and failing to construe the coverage clause of the Endorsement and its clear statement that coverage is added for "any" claim "arising out of, or related to any: assault, battery."  The district court reasoned, mistakenly, that the earlier paragraph limited the expansion of coverage solely to claims barred by the assault and battery exclusion, so that the rest of the Endorsement, no matter what language USIC chose to use, could not possibly restore coverage for a claim involving a weapon.  The district court erred by construing the coverage clause narrowly, and this Court should reverse.

    1.    <u>The Underlying Lawsuit alleged an assault and battery
for which coverage was excluded and then restored.</u>

The Underlying Lawsuit alleges Mr. Dixon was hit by a stray bullet when a fight broke out between two other people.  (Doc 1-1, p. 87 of 115)  The fighters were clearly involved in an assault and battery, and their assault and battery is clearly related to Mr. Dixon's bodily injury.  The Assault or Battery Exclusion excludes coverage for bodily injury "directly or indirectly … related to any: assault [or] battery."  (Doc 1-1, p. 26 of 115)  The exclusion applies whether the fighters were patrons, employees "or any other individual."  (<u>Id</u>.)  The exclusion applies whether the fighters intended to harm Mr. Dixon or did so unintentionally.  (<u>Id</u>.)  Thus, Mr. Dixon's claims are excluded by the Assault or Battery Exclusion.

8

Everyone agrees, even the district court, that "the plain language of the Endorsement [for 'Limited Coverage Assault or Battery Related Claims'] restores coverage excluded under the Assault or Battery Exclusion."  (Doc 17, p.8)  Mr. Dixon's claims fall into that group of claims excluded under the Assault or Battery Exclusion.  Thus, coverage is restored by the Endorsement.

To be sure, Mr. Dixon's claims are also excluded by the Absolute Weapons Exclusion, but nothing in the plain language of the Endorsement states that coverage for claims excluded by two exclusions cannot be restored by the Endorsement.  The Underlying Lawsuit alleges assault or battery, and the Endorsement restores coverage for those claims.  The district court erred by failing to consider that the Endorsement restored coverage for Mr. Dixon's assault and battery claims.

> 2.    The Endorsement restores coverage for "any" assault and battery, including those involving weapons.

The plain language of the Endorsement restores coverage for "any" claim "arising out of, or related to any: assault [or] battery."  (Doc 1-1, p. 26 of 115)  The word "any" is not defined.  Georgia courts use dictionaries when construing common terms that are undefined in the policy.  *See Alea London Ltd. v. Lee*, 286 Ga. App. 390, 393 (2007) (consulting Meriam-Webster online dictionary).  The common meaning of "any" is "one or some indiscriminately of whatever kind."  A secondary definition is "EVERY – used to indicate one selected without

restriction."[3]  Other courts agree "any" has the same meaning given to it by Merriam-Webster and by Mr. Dixon in this brief. [4]

Because "any" assault or battery means "every" assault or battery of whatever kind, it plainly encompasses an assault or battery with a weapon.  The district court construed the coverage provision of the Endorsement narrowly by ruling that "any" and "every" assault or battery does not include an assault or battery with a weapon.  An assault with a weapon is one of "any" assaults, so the district court erred.

Other plain language in the Endorsement confirms that an assault or battery with a weapon is granted "limited" coverage.  The Endorsement provides coverage for an assault or battery "of whatever kind".  (Doc 1-1, p. 74 of 115)  An assault or battery "of whatever kind" is a large universe of assaults and batteries.  The district court erred in ruling that an assault or battery with a weapon is not within that universe.  The Endorsement provides coverage for every assault or battery "without restriction."  (Doc 1-1, p. 74 of 115)  The district court erred by ruling

---

[3] https://www.merriam-webster.com/dictionary/any

[4] "[T]he word 'any' means 'all' or 'every' and imports no limitation." *Scottsdale Ins. Co. v. McGrath*, 506 F. Supp. 3d 216, 224 (S.D.N.Y. 2020).  "[A]ny means all." *Livingston v. Trustgard Ins.*, 988 F. Supp. 2d 873, 877 (N.D. Ill. 2013), *aff'd*, 558 F. App'x 681 (7th Cir. 2014). "[T]he word 'any' in its ordinary meaning means 'all or every' and we so interpret it." *Lambert v. New England Fire Ins. Co.*, 90 A.2d 451, 455 (Maine, 1952).

that there was a restriction if the assault or battery was with a weapon.  The district

court's conclusion cannot be squared with the plain language of the policy, and this

Court should reverse the district court.

### B.    The Endorsement Restoring Coverage Must be Read Broadly and the Weapons Exclusion Narrowly.

#### 1.    Insurance policies are broadly construed in favor of coverage, even when there is no ambiguity.

"Insurance policies are to be construed strictly in favor of the insured and

against the insurer since they are prepared and written by the insurer." *Sovereign*

*Camp v. Heflin*, 188 Ga. 234 (1939).  "A contract of insurance should be strictly

construed against the insurer and read in favor of coverage." *Roland v. Georgia*

*Farm Bureau*, 265 Ga. 776, 777 (1995).  Broad construction of insuring

agreements is an application of the general rule that contracts are to be construed

"**to advance the beneficial purposes intended to be accomplished**." *Cherokee*

*Credit Life Ins. Co. v. Baker*, 119 Ga. App. 579, 582 (1969) (emphasis added).

*Sovereign* and *Roland* are but two examples where the Supreme Court of

Georgia applied rules of construction applicable to all contracts to construe a

policy in favor of coverage without finding any ambiguity.  Indeed, *Roland*

expressly held that the policy "unambiguously covered" the claim. *Id*. at 777.

Other Georgia courts and federal courts applying Georgia law have followed

suit:  "It is a cardinal principle of insurance law that a policy or contract of

11

insurance is to be construed liberally in favor of the insured." *Clark v. United Ins. Co. of Am.*, 199 Ga. App. 1, 5 (1991) (applying rule without finding ambiguity). "Under Georgia law, insurance policies are liberally construed in favor of coverage." *Barrett v. Nat'l Union*, 304 Ga. App. 314, 320-21 (2010) (no ambiguity). In Georgia, insurance contracts are "liberally construed in favor of coverage." *Houston Specialty Ins. Co. v. Five Paces Inn Co.*, 823 F. App'x 897, 899 (11th Cir. 2020) (affirming coverage without finding ambiguity). "Policies of insurance will be liberally construed in favor of the object to be accomplished, and the conditions and provisions of contracts of insurance will be strictly construed against the insurer who prepares such contracts." *Hartford Cas. Ins. Co. v. Smith*, 268 Ga. App. 224, 226 (2004) (no ambiguity), *cert. denied*, Sept. 27, 2004.

> 2.  <u>Exclusions and limitations are strictly construed so as to avoid forfeiture, even if there is no ambiguity.</u>

In contrast to the grant of coverage, "exclusions in an insurance policy are to be interpreted narrowly, in favor of the insured, on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." *Rentrite, Inc. v. Sentry Select Ins. Co.*, 293 Ga. App. 643, 647 (2008). *Rentrite* narrowly construed an exclusion without finding the exclusion to be ambiguous. This is an application of the general rule: **"The law does not favor forfeitures, and**

**provisions in contracts as to forfeitures must be strictly construed.”** *De Lamar v. Fid. Loan & Inv. Co.*, 158 Ga. 361 (1924) (emphasis added).

"[I]nsurance contracts are interpreted by ordinary rules of contract construction and exclusions are to be strictly construed." *State Farm v. Goodman*, 259 Ga. App. 62, 63 (2002) (narrowly construing limitation without finding ambiguity). "As with any insurance policy, we construe the policy exclusions most strongly against the insurer and in favor of providing the indemnity sought. *Fid. Nat. Title Ins. Co. v. Matrix*, 255 Ga. App. 874, 878 (2002) ("construing the policy exclusions against [the insurer]" without finding ambiguity). "[A]ny exclusion from coverage sought to be invoked by the insurer is to be strictly construed." *Nationwide v. Kim*, 294 Ga. App. 548, 552 (2008) (no ambiguity).

Georgia law includes "the canon that exclusions in insurance policies are narrowly and strictly construed against the insurer and forgivingly construed in favor of the insured to afford coverage." *Barrs v. Auto-Owners Ins. Co.*, 564 F. Supp. 3d 1362, 1379 (M.D. Ga. 2021) (cleaned up). The *Barrs* court ruled three exclusions did not apply without finding any of the exclusions ambiguous, "because [the Court correctly reasoned] Georgia law requires courts to construe exclusions in insurance contracts against the insurer." *Id*. at 1381. "Furthermore, exceptions and exclusions to coverage must be narrowly and strictly construed against the insurer and forgivingly construed in favor of the insured to afford

13

coverage." *Wilkinson v. Georgia Farm Bureau*, 351 Ga. App. 891, 893 (2019).

*Wilkinson* construed the phrase "use [of a vehicle]" narrowly without finding any

ambiguity. *Id*. at 894-95.

### 3. Reasonable expectations doctrine.

"[I]nsurance contracts are to be read in accordance with the reasonable

expectations of the insured where possible." *Richards v. Hanover*, 250 Ga. 613,

615 (1983). The insurer "ha[s] the burden of drafting clear and precise language."

*Id*. "Unless the terms of the policy are plainly to the contrary," Georgia courts

will not read a policy to allow for forfeiture after a premium is paid. *Id*.

### 4. Applying these rules, coverage is readily apparent.

As explained above, the Endorsement's plain language provides for

coverage without resort to the rules applicable to grants of coverage and

exclusions. Considering these rules, however, when one construes the grant of

coverage in the Endorsement broadly and the weapons exclusion narrowly,

coverage becomes even more apparent. A reasonable insured would expect

coverage for "any" assault or battery to include assault or battery with a weapon,

and USIC failed to fulfill its burden "of drafting clear and precise language … to

the contrary." *Richards*, 250 Ga. at 615.

The grant of coverage in the Endorsement provides a smaller limit for "any"

assault and battery. As explained above, "any" means of any kind and without

14

limitation.  The weapons exclusion also uses the word "any", but that was not the final word.  One way to harmonize the two endorsements is found in the bold sentence at the top of the added assault and battery endorsement, which reads as follows:  "This endorsement modifies the insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART."  (Doc 1-1, p. 74 of 115)  The weapons exclusion also applies to the Commercial General Liability Coverage Part.  Reading the exclusion narrowly and the grant of coverage broadly, coverage for weapons was excluded, but coverage was restored if, and only if, the weapon was part of an assault or battery.

The district court erred in failing to construe the grant of coverage for "any" assault or battery in the Endorsement broadly enough to include an assault or battery involving a weapon.  This Court should reverse the district court and rule that the Endorsement reinstates "limited" coverage for claims of assault and battery asserted in the Underlying Lawsuit.

### C.    In the Alternative, the Endorsement and Weapons Exclusion Conflict, Creating an Ambiguity.

"There is a low threshold for establishing ambiguity in an insurance policy." *St. Paul Mercury Ins. Co. v. F.D.I.C.*, 774 F.3d 702, 709 (11th Cir. 2014).  A provision in an insurance policy is ambiguous, and construed most favorably to the insured, if the words "are susceptible to more than one meaning, even if each meaning is logical and reasonable."  *Auto-Owners Ins. Co. v. Neisler*, 334 Ga. App.

15

284, 286-87 (2015).  Ambiguity requires simply that words be "open to various interpretations." *Id*.  To find an ambiguity, a court need only find that "the construction is doubtful." *Lee v. Universal Underwriters Ins. Co.*, 642 F. App'x 969, 972 (11th Cir. 2016) (citing O.C.G.A. § 13–2–2(5)).

An application of the rule of ambiguities is that when two provisions in an insurance policy can be read as conflicting, "the court will construe them in favor of the insured." *Davis v. United Am. Life Ins. Co.*, 215 Ga. 521, 527 (1959).  For example, when a "vandalism and malicious mischief" provision excludes coverage for loss from "theft and burglary," and another provision covers "damage by burglars to the dwelling or other structures," the provisions conflict and are ambiguous. *Auto-Owners v. Neisler*, 334 Ga. App. 284, 287-88 (2015).

A district court applying Georgia law ruled that endorsements substantially similar to the endorsements at issue in this case conflicted and created an ambiguity. *Penn-Am. Ins. Co. v. VE Shadowood, LP*, 2022 WL 6791444, at *3 (M.D. Ga.).  The policy in *Penn-Am* excluded coverage for claims "arising out of the use ... of firearms or other weapons but included an endorsement for limited coverage for assault and battery. *Id.*, at *3.  The court ruled that the firearms endorsement did not trump the endorsement adding limited coverage for assault and battery and that the conflicting endorsements were ambiguous. *Id*.

16

> One endorsement grants coverage and one takes away coverage.
> Nothing in the policy suggests the grant of coverage is taken away by
> the firearms endorsement.

*Id*.  In this case, nothing in the Endorsement granting coverage for "any" assault

and battery claim (in a limited amount) states that "any" does not include an

assault and battery with a weapon.  Nothing in the weapons exclusion indicates

that it trumps the Endorsement restoring coverage for any assault or battery.

If this Court were inclined to disagree with the court in *Penn-Am*, under

Eleventh Circuit precedent, the disagreement would indicate the policy is

ambiguous.  *St. Paul Mercury*, 774 F.3d at 710 (noting that if two courts "reach[]

opposite conclusions about the effect of a nearly identically worded [exclusions],

that fact supports a finding of ambiguity under Georgia law).

USIC could have clearly stated that the Endorsement restoring coverage for

"any" assault or battery did not restore coverage for an assault or battery with a

weapon; but it did not.  The Endorsement, for which GGI paid a premium, can be

read as restoring "limited" coverage for an assault or battery involving a weapon.

Not "any" loss involving a weapon, as stated in the weapons exclusion, but just for

those losses involving weapons that also constitute an assault or battery.

Although the plain language provides coverage, in the event this Court

disagrees, the policy is certainly capable of multiple, reasonable interpretations,

rendering it ambiguous as a matter of law.  The district court erred in failing to conduct a thorough analysis of the ambiguity, and this Court should reverse.

### D.    At the Very Least, there Was a Duty to Defend.

It is well settled that the duty to defend is governed by a lesser standard than the duty to indemnify.  "[W]hether an insurer has a duty to defend depends on the language of the policy as compared with the allegations of the complaint." *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 407-08 (2012).  "If the facts as alleged in the complaint even **arguably** bring the occurrence within the policy's coverage, the insurer has a duty to defend the action."  *Id* (emphasis added).  "The duty to defend is excused only when a complaint unambiguously excludes coverage under the policy, and thus, the duty to defend exists if the claim **potentially** comes within the policy."  *Nationwide  v. Somers*, 264 Ga. App. 421, 424-5 (2003) (emphasis added).  "Where the claim is one of potential coverage, doubt as to liability and the insurer's duty to defend should be resolved in favor of the insured."  *Id*. (citing *Penn–America Ins. Co. v. Disabled American Veterans,* 268 Ga. 564 (1997).

As argued above, there can be little doubt that there is at least "potential" or "arguable" coverage for the claims asserted in the Underlying Lawsuit.  This Court should rule that there is potential or arguable coverage and rule that the district court erred in denying Mr. Dixon's Motion for Partial Judgment on the Pleadings.

## IV.    CONCLUSION

Some endorsements take away coverage and others give coverage.  Some endorsements restore coverage otherwise taken away.  That is what happened here. When an endorsement grants coverage for "any" assault and battery, that endorsement cannot be reasonably interpreted to mean only "some" assaults and batteries.  At best, USIC created an ambiguous policy.  This Court should rule that there is potential or arguable coverage for claims asserted in the Underlying Lawsuit, reverse the district court, and rule that the district court must grant Mr. Dixon's Motion for Partial Judgment on the Pleadings.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because this brief contains 4,331 words as calculated by Microsoft Word, excluding the parts of the brief exempted by FRAP 32(f) and by 11th Cir. R. 32-4. This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point.

Certified and checked for compliance on November 20, 2023, by

*/s/ Richard E. Dolder, Jr.*
Richard E. Dolder, Jr.
Georgia Bar No. 220237
**SLAPPEY & SADD, LLC**
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677
*Attorney for Plaintiff-Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the forgoing **APPELLANT'S OPENING BRIEF** was filed

electronically with this Court using the CM/ECF system, which will automatically

send e-mail notifications of such filings to the attorneys of record for United

Specialty Insurance Company. I further certify that four paper copies of the

forgoing were provided to the Court in a manner consistent with FRAP 31(b) and

11th Cir. R. 31-3.

Certified and done on November 20, 2023, by

*/s/ Richard E. Dolder, Jr.*
Richard E. Dolder, Jr.
Georgia Bar No. 220237
**SLAPPEY & SADD, LLC**
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677
*Attorney for Plaintiff-Appellant*